RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 5/10/06 DB

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| FREDDIE SMITH, ET AL. | CIVIL ACTION NO. 03-2076 |
| VERSUS | JUDGE DONALD E. WALTER |
| MICHAEL J. FIFTHIAN, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment filed on behalf of defendants, Ladd Trucking, Inc., Jordan Arnold, Jr. and Vernon L. Cannon [Doc. #99] pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose this motion. For the reasons assigned herein, the Motion for Summary Judgment filed on behalf of Ladd, Arnold and Cannon [Doc. #99] is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT OF THE CASE

Plaintiffs, Freddie Smith and his wife, Lori Smith, bring this state law negligence action against, inter alia, Ladd Trucking ("Ladd"), Jordan Arnold, Jr. ("Arnold") and Vernon L. Cannon ("Cannon"), for injuries sustained by Freddie Smith as a result of a tractor trailer accident. This matter was originally filed in the Second Judicial District Court, Bienville Parish, Louisiana. Defendants removed the case to this Court based on this Court's diversity jurisdiction.

On August 10, 2002, at approximately 3:00 p.m., a 2000 International tractor trailer rig owned by Ladd and operated by Arnold and Cannon (the "Ladd rig") came to a stop at mile marker 64 while eastbound on Interstate 20 ("I-20") near Arcadia, Bienville Parish, Louisiana. Arnold and Cannon parked their rig on the shoulder of I-20. See Defendants' Statement of Uncontested Facts ("SUF"), ¶2; see also Plaintiffs' Statement of Material Facts ("SMF"), ¶2. According to Arnold and

Cannon, the turbo on the Ladd rig "went out" while Cannon was traveling on I-20. Cannon testified in his deposition that he drove "as far as he could" before pulling onto the shoulder of the interstate. Deposition of Vernon Leon Cannon ("Cannon depo."), pp 7, 66-68; Deposition of Jordan Arnold, Jr. ("Arnold depo."), pp. 36-37, 53-54. Cannon placed the three emergency triangles out behind the Ladd rig. Cannon depo., pp. 27, 31, 58. Cannon stated that he placed the triangles out at a safe distance which, according to Cannon's deposition testimony, was "[a]nywhere from a hundred feet to 200." Id. at p. 59. Arnold stated in his deposition that the last triangle was placed on the yellow line between the shoulder and the lane of travel. Arnold depo., p. 26.

Arnold and Cannon were taken to a truck stop in Arcadia where they attempted to locate a wrecker service. Arnold depo., p. 38; Cannon depo., p. 45. Arnold and Cannon met Michael Fifthian ("Fifthian"), a fellow truck driver employed by Interstate Express, Inc. ("Interstate"), in Arcadia. Deposition of Michael Fifthian ("Fifthian depo."), p. 16. Fifthian was driving a tractor trailer rig owned by Keith Schonherr (the "Fifthian rig"). Cannon depo., pp. 45-46; Fifthian depo., p. 36. During daylight hours, Fifthian took Arnold and Cannon back to the Ladd rig to obtain the rig's Vehicle Identification Number ("VIN"). Cannon depo., p. 46. Cannon activated the running lights of the Ladd rig while waiting for the wrecker service. Id. at pp. 46-47; Arnold depo., pp. 37-38. The wrecker service did not arrive so Fifthian, Arnold and Cannon returned to the Arcadia truck stop where Cannon contacted his employer to find another wrecker service. Cannon depo., p. 47; Arnold depo., p. 38. The second wrecker service failed to appear as well. Arnold depo., p. 38; Fifthian depo., p. 16.

At some time between eleven in the evening and midnight, Cannon's employer contacted a third wrecker service, Pratt's Towing Service, that was based in Texarkana, Arkansas. Id. at p. 40;

Cannon depo., p. 50. Approximately two to three hours later, a tow truck operated by Randy Smith arrived and parked on the shoulder of I-20 about six feet east of the Ladd rig. Deposition of Randy Smith ("Randy Smith depo."), pp. 71, 73. The tow truck, the Ladd rig and the Fifthian rig were all parked on the shoulder of the interstate, approximately 26 inches south of the fog line. Fifthian depo., p. 18; Deposition of Larry Moore ("Moore depo."), p. 11. The tow truck had its headlights, four-way flashers and yellow lights activated. Id. at p. 37; Cannon depo., p. 70; Randy Smith depo., pp. 28, 32; Moore depo., p. 12. Fifthian activated his four-way flashers and left his running lights on. Fifthian depo., pp. 87-88.

Randy Smith and Moore estimate that they were approximately halfway through the thirty minute-to-one hour procedure involved in hooking up the Ladd rig to be towed when a tractor trailer rig operated by plaintiff, Freddie Smith, collided with the Fifthian rig. Randy Smith depo., p. 72; Moore depo., p. 13; Arnold depo., p. 43. The collision occurred at approximately three o'clock in the morning. Cannon depo., p. 35. Robert Cobb ("Cobb"), a fellow truck driver traveling east behind Freddie Smith, witnessed the accident as did William Sydney Sheppard, Jr. ("Sheppard"). Deposition of Robert Cobb ("Cobb depo."), p. 26; Deposition of William Sydney Sheppard, Jr. ("Sheppard depo."), p. 16. Freddie Smith has no recollection of how the accident occurred. Deposition of Freddie Smith ("Freddie Smith depo."), pp. 101-102. David Burg ("Burg"), Freddie Smith's son and a passenger in the rig driven by Freddie Smith, was asleep at the time of the accident. Burg has no knowledge of the events before, during or after the collision. Deposition of David Burg ("Burg depo."), p. 46.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material

facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

## LAW AND ANALYSIS

Louisiana courts apply a duty/risk analysis to assess liability under Louisiana Civil Code article 2315. To prevail on a negligence claim, a plaintiff has the burden of proving that: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant breached that duty; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the plaintiff suffered actual damages. Joseph v. Dickerson, 754 So.2d 912, 916 (La. 2000); Hardy v. Bowie, 744 So.2d 606, 613 (La. 1999); Meany v. Meany, 639 So.2d 229, 233 (La. 1994). The plaintiff bears the burden of proving every essential of his claim by a preponderance of the evidence. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La. 1993). A negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corporation, 646 So.2d 321, 326 (La. 1997); Stroik v. Ponseti, 699 So.2d 1072, 1077 (La. 1997).

Generally, Freddie Smith asserts that Ladd, Arnold and Cannon are liable for (1) failure to properly maintain the Ladd rig, (2) the Ladd rig having mirrored trailer doors, (3) failure to cease operation of the Ladd rig when damage to the turbo was detected, (4) failure to allow Fifthian to "bobtail" the Ladd tractor to the nearest exit and have the trailer moved by another tractor,[1] and (5) failure to properly place warning devices. The Court will address each allegation in turn.

---

[1] The evidence before this Court indicates that a question remains as to whether Fifthian even made the offer to bobtail the Ladd rig. However, for purposes of this ruling, the Court will assume that Fifthian made the offer and that said offer was declined by Arnold and Cannon.

5

I. **Failure to Maintain the Ladd Rig, to Cease Operations and to Allow Fifthian to "Bobtail" the Ladd Rig.**

Assuming solely for purposes of this ruling that Freddie Smith has established the duty, breach and cause in fact elements of his claim against Ladd, Arnold and Cannon regarding the alleged failure to maintain their rig, failure to cease operations,[2] and failure to allow Fifthian to bobtail the Ladd rig, the Court addresses whether the risk and harm caused falls within the scope of protection afforded by the alleged duties at issue. According to plaintiffs, the general duty owed by defendants was the duty to maintain the Ladd rig in a safe operating condition and to continue operation of a vehicle discovered to be in an unsafe condition only to the nearest place where repairs can safely be effected. Plaintiffs further assert that defendants had a duty to remove their rig from the shoulder of I-20 as soon as any opportunity presented itself.

"The scope of protection inquiry asks whether the applicable principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner." Hamilton v. City of Shreveport, 896 So.2d 76, 79 (La. App. 2 Cir. 2004). To determine whether liability exists for a defendant's substandard conduct, the proper inquiry is how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Id. at 80. In other words, how easily does one associate the plaintiff's complained-of harm with the defendant's conduct? Id. Without an ease of association between the duty breached and the damages sustained, Louisiana courts have found legal fault lacking. Id.; Roberts v. Benoit, 605 So.2d 1032, 1045 (La. 1991).

In Hamilton, supra, a vehicle operated by Joe McGinty ("McGinty") collided with a utility

---

[2]Plaintiffs assert that Arnold and Cannon failed to "cease[] operation [of the Ladd rig] as mandated once the turbo problem started." See Plaintiffs' Statement of Material Facts ("SMF"), ¶49.

6

trailer that was parked on the shoulder of Shreveport-Blanchard Highway. A second vehicle operated by Rickey Johnson ("Johnson") struck the rear of the McGinty vehicle. L.V. Hamilton ("Hamilton") then collided with a stationary Shreveport Police Department police cruiser that was blocking traffic on Shreveport-Blanchard Highway while a tow truck removed the damaged utility trailer. Hamilton died as a result of the collision with the police car.

Hamilton's wife and daughter filed suit against, inter alia, McGinty and his insurer, Johnson and his insurer and the owner of the utility trailer. The district court granted summary judgment in favor of the owner of the utility trailer and McGinty, Johnson and their insurers. In discussing the scope of protection of statutes regulating the movement of motor vehicles on the highway, the Louisiana Second Circuit Court of Appeals framed the issue as follows:

> [W]hether the risk of injury from a collision with a stationary police car at an accident scene, a situation produced by a combination of defendants' conduct and the act of a third party, is within the scope of protection of the duty imposed on defendants while operating their motor vehicles?

Hamilton, 896 So.2d at 80.

The Hamilton Court found that the plaintiffs failed to demonstrate an ease of association between the defendants' conduct in causing the first accident and the risk of injury to decedent "under the circumstances and in the manner the injury occurred." Id. at 80. In particular, the Court determined that although the relevant statutes creating a motorist's duty to drive at a safe speed and distance were designed to prevent accidents such as that between McGinty and Johnson, "[t]he risk that decedent would later drive while intoxicated and collide with an illuminated police vehicle, which was placed in the roadway as a warning of the first accident, must be considered outside of the ambit of protection contemplated by the imposition of the statutory duty." Id.

In the present case, the issue is whether the risk of injury from a collision with a stationary tractor trailer parked on the shoulder of the interstate while providing assistance to defendants Arnold and Cannon, such assistance allegedly made necessary by defendants' omissions, is within the scope of protection of the duty imposed on defendants to maintain the Ladd rig and to proceed to the nearest exit off of the interstate or to take any opportunity to remove their rig from the shoulder of I-20. Plaintiffs have failed to demonstrate an ease of association between the defendants' alleged omissions and the risk of injury to Freddie Smith under the circumstances and in the manner the injury occurred.

The evidence before the Court shows that Freddie Smith did not collide with the Ladd rig, but, rather, the Fifthian rig. Further, the Ladd rig remained on the shoulder of I-20 without incident for 12 to 13 hours prior to the collision at issue. See deposition of Lane Tuggle ("Tuggle depo."), p. 111.[3] A reading of the relevant statutes indicates that the purpose of the motor carrier's duty to maintain his vehicle is to prevent a vehicle from becoming disabled while traveling on a public roadway, as did the Ladd rig. The risk that Freddie Smith would, 13 hours later, collide with a second tractor trailer that was parked on the shoulder of I-20 behind the Ladd rig while providing assistance to Arnold and Cannon, must be considered outside of the ambit of protection contemplated by the imposition of the duty under the federal regulations. Thus, defendants' motion is granted as to these allegations.

## II. The Ladd Rig's Mirrored Trailer Doors

---

[3] The State Trooper who investigated the accident, Lane Tuggle, testified that "[b]etween 3:00 p.m. and 3:01 a.m., the State Police did not get a call on that vehicle parked on that shoulder I can say without a doubt." Tuggle further testified that "[i]f [the Ladd rig] had been a problem out there, we would have got {sic} a call about it . . . We got no calls about it." Id.

Plaintiffs have provided the Court no evidence, and have cited no law, that prohibits or bans mirrored trailer doors. In other words, plaintiffs have failed to establish that Arnold, Cannon and Ladd had a duty or that a duty was breached with regard to the trailer doors. Without a duty or a breach, any claim based on an allegation regarding the presence of mirrored trailer doors must be dismissed.

### III.     Failure to Properly Place Warning Devices

It is undisputed that 49 CFR §392.22 requires that warning devices, such as emergency triangles, be used when a commercial motor vehicle is stopped on the traveled portion or shoulder of a highway for any cause other than necessary traffic stops. The regulation provides that the triangles be spaced at a distance of 10 feet, 100 feet and 200 feet from the rig. 49 CFR §392.22(b)(2)(v). The regulation further requires that if the commercial motor vehicle is stopped within 500 feet of an obstruction to view, the driver place the emergency triangles "in the direction of the obstruction to view a distance of 100 feet to 500 feet from the stopped commercial motor vehicle so as to afford ample warning to the other users of the highway." 49 CFR §392.22(b)(2)(iv).

Arnold testified in his deposition that Cannon placed the emergency triangles at 10, 20 and 30 feet from the Ladd rig. Arnold depo., p. 47. Cannon testified that he placed the triangles behind the Ladd rig at "a safe distance . . . Anywhere from a hundred feet to 200." Cannon depo., p. 59. The deposition testimony is unclear as to how far behind the Ladd rig the Fifthian rig was parked. Arnold depo., p. 27 (10 to 20 feet); Fifthian depo., p. 99 (150 feet between the two trucks); Randy Smith depo., p. 72 (approximately 150 feet). However, it is undisputed that the Fifthian rig was within 500 feet of the Ladd rig. Further, there is no evidence that any triangles were placed behind the Fifthian rig.

Whether defendants breached their duty to properly place warning devices, and whether that breach caused Freddie Smith's injuries are issues to be determined by the fact finder, and are not appropriately decided on summary judgment. Accordingly, defendants' motion is denied as to plaintiffs' claim based on allegations regarding the placement of warning devices.

## CONCLUSION

For the reasons stated above, defendants' motion is **GRANTED** as to plaintiffs' claims related to defendants' alleged failure to maintain the Ladd rig, defendants' alleged failure to cease operating the Ladd rig upon discovering a turbo problem, defendants' failure to allow Fifthian to bobtail the Ladd rig and the presence of mirrored trailer doors on the Ladd rig. Defendants' motion is **DENIED** as to plaintiffs' claim related to defendants' alleged failure to properly place warning devices.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE